THOMAS MILLER *vs.* ROBERT McCARDELL.

Where the lessor of a hotel covenants "that he will keep the outside of said premises in good repair ; provided, however, that he shall not be liable for any loss arising in said house by damage from the weather," the lessee on his part covenanting "that he will keep the interior of said building in good repair, reasonable wear and tear alone excepted," the lessor is bound to put the premises in good repair though they were in bad repair when the lease was given.

DEFENDANT'S petition for a new trial.

*December* 5, 1895.    TILLINGHAST, J.    This action is brought to recover damages alleged to have been sustained by the plaintiff by reason of the breach, on the part of the defendant, of a certain covenant in a lease made by him. The record shows that on the first day of April, 1892, the defendant leased to the plaintiff the estate situated at the south-easterly corner of Mathewson and Washington streets, in the city of Providence, with the building thereon known as the St. George Hotel, for the term of three years, the defendant on his part covenanting, "that he will keep the outside of said premises in good repair ; provided, however, that he shall not be liable for any loss arising in said house by damage from the weather ;" and the plaintiff covenanting, on his part, "that he will keep the interior of said building in good repair, reasonable wear and tear alone excepted."

At the trial of the case in the Common Pleas Division, the plaintiff offered proof that the roof of said building was out of repair to such an extent that it leaked very badly, causing the house to be frequently flooded with water, the plastering in several of the rooms to fall off, and the paper to peel off from the walls, thereby rendering said rooms uninhabitable

and causing serious damage thereto, and also to the furniture therein, and depriving the plaintiff of the use and benefit of quite a large part of said hotel, and also necessitating the frequent repair of the interior thereof by the plaintiff. Proof was also submitted that during the subsistence of said lease the plaintiff repeatedly requested the defendant to repair the roof and outside of said building, so as to prevent it from leaking ; that the defendant repeatedly promised to make such repairs, and that he had on several occasions made some slight repairs thereon, but that they were ineffectual to stop the leaks from which the plaintiff was suffering. It further appeared in evidence that the roof and exterior of said building was out of repair at the time of the making of said lease. The court ruled that, in view of the provisions in the lease, the plaintiff could not recover for damages to his furniture contained in said building caused by the defendant's neglect to keep the exterior thereof in repair, but that he could recover for the loss of the use of and rental of such rooms in said building as were rendered untenantable on account of said neglect to repair, and also for the expense to which he had been put in repairing the damages caused by the injury to the interior of said building through the defendant's neglect as aforesaid. The jury found in favor of the plaintiff, and awarded him damages in the sum of $750. The defendant now petitions for a new trial on the grounds that the verdict was against the evidence and the weight thereof, and that the court erred in its rulings aforesaid.

The only contention which is urged at the trial of this petition on the part of defendant is, that the said covenant to repair was fully performed by him if he maintained the premises in the same condition and form as they were when the lease was given. Or, in other words, that as the exterior of the building was in bad repair when the plaintiff hired it, the defendant was under no obligation to put it in good repair during the subsistence of said lease.

The covenants to repair in the lease in question were evidently intended to be reciprocal. That is to say : The lessor,

in consideration of the covenant to keep the interior of the premises in good repair on the part of the lessee, covenanted on his part to keep the exterior of said premises in good repair.   And while the covenant of the lessor may seem at first blush to be self-contradictory and therefore nugatory, in that it provides that the lessor "shall not be liable for any loss arising in said house by damage from the weather," yet taking both of said covenants together, as we are bound to do in construing the instrument, it would be absurd to hold that the lessor is not equally bound to the performance of the one, as is the lessee to the performance of the other. Indeed, the first duty to repair is evidently on the lessor, as it would be idle and useless to attempt to keep the interior of the premises in good repair so long as the exterior thereof is not in a condition to withstand the ordinary weather incident to our climate.   Moreover, it is a well settled rule, in the construction of covenants and other written instruments, that where there is doubt or ambiguity, the construction should be most favorable to the party in whose favor the covenant is made, and most strongly against the party imposing such covenant upon himself.   4 Am. & Eng. Encyc. Law, 470, note, and cases cited.   Just what is meant by the proviso to the lessor's covenant aforesaid it is not easy to determine.   But we think the Common Pleas Division, in holding that it had the effect to exonerate the lessor from damage to the furniture of the lessee, caused by the leaky condition of the roof and other parts of the house, put quite as favorable a construction thereon as the defendant was entitled to, and hence that he has no reason to complain of said ruling.

That the lessor understood that the duty of keeping the exterior of said building in repair was devolved upon him under his said covenant, is clearly apparent from his repeated promises aforesaid, and also from the actual repairs made by him.   As to the contention of counsel for the defendant that the covenant to keep said premises in good repair is fully performed by keeping the same in as good condition as when leased, we have to say, that if by this he means that a land-

lord who lets a building for the purposes of a dwelling house
or hotel, the building at the time being in whole or in part
uninhabitable by reason of its being out of repair, the lessor
is under no obligation to *put* the same in repair, so as to make
it inhabitable, we do not agree to such contention.   A dwell-
ing house or hotel is primarily made for people to live in, and
is intended to protect them from the weather ;  and in order
to be habitable or tenantable, it must furnish such protection.
And where one lets a house for people to live in and agrees
to keep it in good repair, he is bound by the dictates of com-
mon reason, as well as by those of common law, both to *make*
it and to *keep* it habitable ;  that is, reasonably fit for the
occupation of a tenant of the class who occupies it.   If we
allow the position taken by the defendant, as we understand
it, to prevail, the result will practically be this :  That as the
said hotel building was in bad repair when the plaintiff hired
it, the defendant was bound by his said covenant to keep it in
like bad repair during the subsistence of the lease, thus ex-
actly reversing the express terms thereof.

In *Payne* v. *Haine*, 16 M. & W. 541, which was a case
where the tenant agreed to keep the premises, and at the
expiration of the tenancy to deliver up the same, in good
repair, Parke, B., in delivering the opinion of the court, said :
" If, at the time of the demise, the premises were old and in
bad repair, the lessee was bound to put them in good repair
as old premises ;  for he cannot ' keep' them in good repair
without putting them into it.   He might have contracted to
keep them in the state in which they were at the time of the
demise.   This is a contract to keep the premises in good
repair, as old premises ;  but that cannot justify the keeping
them in bad repair because they happen to be in that state
when the defendant took them.   The cases all show that the
age and class of the premises let, with their general condition
as to repair, may be estimated, in order to measure the extent
of the repairs to be done.   Thus, a house in Spitalfields may
be repaired with materials inferior to those requisite for re-
pairing a mansion in Grosvenor-square ;  but this lessee cannot
say he will do no repairs, or leave the premises in bad repair,

because they were old and out of repair when he took them. He was to keep them in good repair, and in that state, with reference to their age and class, he was to deliver them up at the end of the term." To "keep in good repair," says Rolfe, B., in the same case, "presupposes the putting into it, and means that during the whole term the premises shall be in good repair." See also *Cooke* v. *Cholmondeley*, 4 Drewry, 326; *Proudfoot* v. *Hart*, L. R. 25 Q. B. 42. In *Myers* v. *Burns*, 35 N. Y. 269, the landlord covenanted to keep the hotel and premises in good necessary repair at his own expense, and he was held liable thereunder to do what was necessary to enable the tenant to use the premises, although the defect had existed at the commencement of the lease. See also *White* v. *Albany Railway*, 17 Hun. 98; *Kelsey* v. *Ward*, 38 N. Y. 83; *Hexter* v. *Knox*, 63 N. Y. 561; *Stewart* v. *Lanier House Co.*, 75 Ga. 582.

In Taylor's Landlord and Tenant, 8th ed. § 330, the author says: "A general covenant to repair, when made by the lessor, requires him not only to keep the premises in good repair, but to put them in that condition, although the tenant may have entered. And if he neglects to make suitable repairs, after being thereunto required by the tenant, the latter may, after waiting a reasonable time, make such repairs himself, and recover the expense from his landlord; or he may at his option leave the premises unrepaired, and recover any damages he may have sustained from the landlord's default therein."

See also *Cohen* v. *Habenicht*, 14 Rich. Eq. (S. C.) 31; *Gutteridge* v. *Munyard*, 1 M. & R. 334; *Harris* v. *Jones*, *ib.* 173; *Mantz* v. *Goring*, 4 Bing. New Cases, 451; *Stanley* v. *Towgood*, 3 Bing. New Cases, 4; Wood's Landlord and Tenant, § 370.

Petition for new trial denied and dismissed.

*John M. Brennan & Dennis J. Holland*, for plaintiff.

*Edward D. Bassett & Edward L. Mitchell*, for defendant.